WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-16-00325-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Beatrice Denise Welsh, | |
| Defendant. | |

Defendant Beatrice Welsh is charged with driving under the influence and assault resulting in serious bodily injury from an incident that occurred on the Colorado River Indian Reservation on October 8, 2014. (Doc. 1.) Defendant filed a request for a voluntariness hearing on January 19, 2017, arguing that the admission of statements she made to an examining doctor on the night in question would violate her *Miranda* rights and the Fifth Amendment privilege against compelled self-incrimination. (Doc. 33.) Defendant also filed a motion to preclude the statements based on a purported doctor-patient privilege. (Doc. 34.)

The Court granted Defendant's request and held an evidentiary hearing on March 2, 2017. (Docs. 42, 69.) For reasons stated below, the government is precluded from using at trial the statements Defendant made to the examining doctor because the statements were not voluntarily made and their admission would violate the Fifth Amendment.

**I. Background.**

After being involved in a single-vehicle rollover accident, Defendant was arrested and handcuffed by Officer Sandoval, a Colorado River Indian Tribes (CRIT) police officer. Defendant was examined for injuries by EMTs at the scene, and signed a "Release of Responsibility" form indicating she refused EMT transportation to a medical facility. (Doc. 67.) Despite Defendant's express desire not to be transported to a facility for medical examination, Officer Sandoval directed CRIT Officer Michelle Iszick to transport Defendant to Parker Indian Health Services hospital (IHS) for medical examination before her booking at the jail.

Although Officer Iszick understood that the examining physician was likely to ask Defendant what happened, she did not advise Defendant of her right to remain silent and that any statements she made could be used against her. At IHS, Officer Iszick remained in the examining room, four or five feet from Defendant, during the entire examination. Officer Iszick could hear both the doctor and Defendant. The doctor asked Defendant what happened, and Defendant responded by admitting to speeding on back roads to avoid police officers and to drinking beer with her passenger just prior to the accident.

**II. Discussion.**

Defendant challenges the voluntariness of her statement to the examining physician in the presence of Officer Iszick. Defendant argues the use of her statements at trial would violate her Fifth Amendment privilege against compelled self-incrimination because she was subjected to custodial interrogation and was not first advised that she had a right to remain silent and that any statements she made could be used against her. (Docs. 33, 34, 46.) The Court agrees.

The Fifth Amendment prevents a criminal suspect from being compelled to be a witness against himself. In *Miranda v. Arizona*, 384 U.S. 436, 478 (1966), the Court made clear that "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized." The Court therefore established

procedural safeguards to protect the privilege against self-incrimination. The *Miranda* decision provides that when an individual is in police custody, "[h]e must be warned prior to any questioning that he has the right to remain silent [and] that anything he says can be used against him in a court of law[.]" *Id.* at 479. After such warnings have been given, the suspect may "knowingly and intelligently waive these rights and agree to answer questions or make a statement." *Id.* "But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." *Id.*

The meaning of interrogation under *Miranda* was addressed in *Rhode Island v. Innis*, 446 U.S. 291 (1980). The Court concluded that "the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Id.* at 300-01. The Court went on to explain that the "functional equivalent" of express questioning by police refers "to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301. Because "the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of police," the functional equivalent determination "focuses primarily upon the perception of the suspect rather than the intent of the police." *Id.*

The voluntariness of in-custody, unwarned statements to a doctor was addressed in *Estelle v. Smith*, 451 U.S. 454 (1981), where the trial court had ordered the State to arrange a psychiatric examination of the defendant to determine his competency to stand trial. At the penalty phase of the trial, the State used the defendant's statements to the doctor to establish his future dangerousness. In finding that the use of the statements violated the Fifth Amendment right against self-incrimination, the Court pointed out that the purpose of the *Miranda* warnings was "to combat what the Court saw as 'inherently compelling pressures' at work on the person and to provide him with an awareness of the

Fifth Amendment Privilege and the consequences of forgoing it[.]" *Id.* at 467.

Significantly, the Court was not dissuaded by the fact that the interrogation was by a doctor. *Id.* at 465. Indeed, the fact that the defendant "was questioned by a psychiatrist designated by the trial court to conduct a neutral examination, rather than by a police officer, government informant, or prosecuting attorney is immaterial." *Id*. at 467. In holding that the defendant's Fifth Amendment right was violated by the State's introduction of the doctor's testimony at trial, the Court stated: "Because [defendant] did not voluntarily consent to the pretrial psychiatric examination after being informed of his right to remain silent and the possible use of his statements, the State could not rely on what he said to [the psychiatrist] to establish future dangerousness." *Id*. at 468.

Here, despite her refusal of transportation by EMTs for medical evaluation, Defendant was transported by Officer Iszick for a medical examination. During the examination, Defendant was in custody, in handcuffs, and in the presence of the police. Any officer in that situation should have known that the doctor would ask Defendant questions that were reasonably likely to evoke an incriminating response. Officer Iszick herself testified that she in fact knew the doctor would likely want a history and would ask Defendant what happened.

The Court finds that the decision to have Defendant medically examined before being taken to jail was reasonable given that she had been involved in a roll-over accident and had suffered a minor injury. Focusing on the perceptions of Defendant, however, the examination by the doctor was the functional equivalent of express police questioning. Defendant had no choice in undergoing the examination, she was in police custody and handcuffed the entire time, and Officer Iszick never left the room. Defendant was not advised that she had the right to remain silent and that any statements she made could be used against her. Under *Miranda*, therefore, her involuntary statements to the doctor may not be used against her at trial.

At the hearing, the government cited *Arizona v. Mauro*, 481 U.S. 520 (1987), in support of its contention that the doctor's questioning of Defendant was not interrogation

or its functional equivalent. In *Mauro*, however, the suspect's wife affirmatively asked to speak with him and the police tried to discourage her, "but finally 'yielded to her insistent demands.'" *Id.* at 528. Moreover, having been told that his wife would be allowed to speak with him, it is doubtful that the suspect "would feel that he was being coerced to incriminate himself in any way." *Id.* Here, by contrast, Defendant was taken to the hospital against her will and reasonably felt the "inherently compelling pressures" that the *Miranda* warnings are meant to combat. *Estelle*, 451 U.S. at 467.

Similarly, the facts of *Innis* are distinguishable because the incriminating response – telling police where the gun was hidden – resulted not from third-party questioning but from a brief conversation between police officers about the safety risk a loose gun may pose to nearby school children. 446 U.S. at 294-95. The conversation between the police officers simply did not rise to the level of interrogation or its functional equivalent.

The Fifth Amendment privilege "serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves." *Miranda*, 384 U.S. at 467. Because Defendant did not voluntarily consent to the medical examination after being informed of her right to remain silent and the possible use of her statements, the government may not rely on what she said to the doctor to establish her guilt at trial. *See Estelle*, 451 U.S. at 468.

**IT IS ORDERED** that the statements made by Defendant during the medical examination conducted prior to her being booked for the crimes charged in this matter were not voluntary and shall not be admissible at trial.

**IT IS FURTHER ORDERED** that Defendant's motion to preclude statements based on a physician-patient privilege (Doc. 34) is **DENIED** as moot.

Dated this 13th day of March, 2017.

Douglas L. Rayes
United States District Judge